**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARLOS ALEJANDRO FERNANDEZ-MOROCHO,<br>Petitioner,<br>v.<br>TODD BALNCHE, et al.,<br>Respondents. | Civ. No. 26-cv-09526 (KSH)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on Petitioner Carlos Alejandro Fernandez-Morocho's petition for a writ of habeas corpus (ECF No. 1, "Petition") in which he seeks a bond hearing or immediate release from immigration custody. The Petition is GRANTED.

## I. BACKGROUND

Petitioner is a native and citizen of Ecuador who entered the United States without inspection on or about July 23, 2013. (ECF No. 8 at 2.) He was apprehended by Customs and Border Patrol agents on July 27, 2013, near the U.S.-Mexico border and was issued an expedited removal order on July 29, 2013. (*Id.*; ECF No. 8-3.) After stating a fear of return to his home country, Petitioner was provided a credible fear interview ("CFI") on August 16, 2013, which he passed. (ECF No. 8 at 2.) Following the positive fear finding, Petitioner was issued a Notice to Appear and placed into full removal proceedings. (ECF Nos. 8-4, 8-6.) On September 18, 2013, Petitioner was released from custody for the pendency of his removal proceedings pursuant to a $7,000 bond. (ECF No. 8-5.) On April 12, 2019, Petitioner was ordered removed *in absentia* by an immigration judge ("IJ") after failing to appear for his hearing. (ECF No. 8 at 2.) Through a joint motion to reopen, the removal order was rescinded, and his removal proceedings were reopened on October 8, 2024. (*Id.*) Petitioner remained free from immigration custody until

March 20, 2026, when he was arrested and detained by Immigration and Customs Enforcement ("ICE") during a targeted enforcement operation. (*Id.* at 1.) Despite being in custody, Petitioner was again ordered removed *in absentia* on July 16, 2026. (*Id.* at 3.) Petitioner's second motion to reopen was then granted, and his removal proceedings currently remain pending. (*Id.*)

In his Petition, Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a) and he is entitled to a bond hearing or release from custody. (ECF No. 1.) Respondents assert that his detention is governed by 8 U.S.C. § 1225(b)(1)(B)(ii) since Petitioner was subject to the expedited removal framework and, therefore, he is not entitled to a bond hearing. (ECF No. 8 at 3.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." *Id.*; *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Petitioner is located within this Court's jurisdiction and is in custody within this Court's jurisdiction. Therefore, this Court has jurisdiction over his claims. *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).

## III. DISCUSSION

The issue before the Court is whether Petitioner's detention is governed by 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a).

Section 1225(b) governs the detention of "aliens seeking admission into the country" and provides that, "[i]f an immigration officer determines that an alien who is arriving in the United

States is inadmissible . . . the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . ., the alien *shall* be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).

Despite the statute requiring that the noncitizen "shall be detained," Congress has authorized the Secretary of the Department of Homeland Security ("DHS") to parole such individuals into the United States for humanitarian reasons. 8 U.S.C. § 1182(d)(5)(A). Additionally, the Board of Immigration Appeals ("BIA") previously allowed IJs to exercise "general custody authority" under 8 U.S.C. § 1226(a) to release on bond those who were initially screened for expedited removal but established a credible fear of persecution. *See Matter of X-K-*, 23 I. & N. Dec. 731, 734–36 (BIA 2005). In 2019, however, that case was overruled by the Attorney General, who determined that individuals transferred from expedited to standard removal proceedings were *not* eligible for bond. *See Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019).

Petitioner was screened for expedited removal in 2013—prior to *Matter of X-K-* being overruled. At the time Petitioner established a credible fear, Respondents had three options under *Matter of X-K-*: "(1) continue to detain Petitioner pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), (2) release Petitioner on parole . . . , or (3) release Petitioner on bond pursuant to 8 U.S.C. § 1226(a)." *Santos Paz v. Bondi*, No. 26-165, 2026 WL 2056532, at *3 (E.D. Va. Feb. 18, 2026). The decision to release Petitioner on bond in 2013 under the *Matter of X-K-* framework supports the conclusion

that his detention is governed by 8 U.S.C. § 1226(a). *See id.*; *see also Da Silva v. Bondi*, No. 25-1220, 2026 WL 193635, at *1 (W.D.N.Y. Jan. 25, 2026) ("The government claims that [petitioner] now is subject to mandatory detention under section 1225(b)(1)(A) as if its decision to release him on bond in 2016 had never happened. This Court disagrees."); *Luna Sanchez v. Bondi*, No. 25-018888, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025) (finding that "DHS's decision to release an individual on bond, as opposed to humanitarian parole . . . constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b)"); *Loja v. FCI Berlin, Warden*, No. 25-386, 2025 WL 3079160, at *2 (D.N.H. Nov. 4, 2025) (observing that, when the government elects to release a person on bond under § 1226(a), rather than humanitarian parole, the government cannot later "turn back the clock, and neither can the Court" (quoting *De Andrade v. Moniz*, No. 25-12455, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025))); *Chaudhari v. Crawford*, No. 25-1772, 2025 WL 3896287, at *4 (E.D. Va. Oct. 23, 2025) (finding that detention was governed by § 1226 where the petitioner had established a credible fear and was granted bond before *Matter of M-S-* was decided).

Respondents argue that Petitioner's detention is governed by 8 U.S.C. § 1225(b), claiming that he was previously paroled and now his status has returned to that which it was at the time of his entry. (ECF No. 8 at 4.) However, Petitioner was never paroled into the United States. He was released on bond as set by an IJ. (ECF No. 8-7.) Bond and parole are not interchangeable procedures. They each have distinct regulations and requirements. Respondents cannot attempt to "turn back the clock" and alter the status under which Petitioner was originally released from custody to justify his detention now. *De Andrade*, 2025 WL 2841844, at *6. Consequently, this Court finds that Petitioner's detention is governed by 8 U.S.C. § 1226(a), and he is entitled to a bond hearing.

## IV. CONCLUSION

Accordingly, the Petition is **GRANTED** and, within seven (7) days of this Order, Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and shall update this Court within three (3) days of that hearing on its outcome. An appropriate Order follows.

Date: September 24, 2026

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.